IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 19-20081-01-DDC |
| CARL ANDERSON (01), | |
| Defendant. | |

## MEMORANDUM AND ORDER

Defendant Carl Anderson filed a pro se[1] Motion for Downward Departure Due to Conditions of Confinement (Doc. 85).  The government filed a Response to Mr. Anderson's motion (Doc. 88).

Mr. Anderson doesn't identify which statute's authority he invokes to seek a downward departure in his sentence.  Under 18 U.S.C. § 3553(b)(1), the court may impose a sentence other than "a sentence of the kind, and within the range" provided by the United States Sentencing Guidelines when "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines[.]"  But the court considers downward departures when it imposes sentence.  *See* 18 U.S.C. § 3553(b) ("Application of guidelines in imposing a sentence.").  It doesn't do so at the post-sentencing stage.  Generally, a "court may not modify a term of imprisonment once it has been imposed[.]"  *Id.* at § 3582(c).

---

[1]   Because Mr. Anderson filed his motion pro se, the court construes his filings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citation omitted).  But the court does not assume the role of advocate for a pro se litigant.  *Id.*

Mr. Anderson cites *United States v. Carty*, 897 F. Supp. 2d 201 (S.D.N.Y. 2012) to support his argument. In *Carty*, the defendant appealed after the court imposed his sentence. *Id.* at 205. The Second Circuit vacated his sentence and remanded the case so the district court could reconsider his request for downward departure. *Id.* The district court then, after reconsideration, issued the same sentence that the Circuit had vacated. *Id.* While that defendant was in prison, the Commission revised the Sentencing Guidelines and made them retroactive. *Id.* Thus, the defendant made his motion to modify his sentence under 18 U.S.C. § 3582(c)(2).

Here, Mr. Anderson argues that *Carty* means the court can consider presentence confinement conditions as grounds for a downward departure. But the court already sentenced Mr. Anderson in August 2022. Doc. 83. And Mr. Anderson doesn't assert that he raised the issue of his confinement conditions during the sentencing phase. Thus, the time to request a downward departure has passed, and the court need not determine whether *Carty*'s reasoning should apply here.

However, like the defendant in *Carty*, Mr. Anderson raises an issue covered under § 3582(c). Specifically, Mr. Anderson makes arguments that invoke those provisions in the statute which allow the court, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," to modify an imposed sentence "if it finds that . . . extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. § 3582(c)(1)(A). For this reason, the court construes Mr. Anderson's motion as a Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(1)(A) and assesses the parties' arguments on this subject below. For reasons explained in this Order, the court denies Mr. Anderson's motion (Doc. 85).

## I.   Factual Background

On January 2, 2020, the government arrested Mr. Anderson after a grand jury had indicted him on four counts of distributing methamphetamine. Docs. 1, 4. A few days later, the

court arraigned Mr. Anderson and ordered him detained pending trial.  Docs. 8, 9.  The U.S. Marshals Service then detained Mr. Anderson at CoreCivic in Leavenworth, Kansas, a for-profit detention center that housed federal defendants proceeding through the trial process.  Doc. 88 at 1.  After President Joe Biden issued an executive order directing the Attorney General not to renew contracts with privately operated detention facilities, the U.S. Marshals Service transferred all detainees at CoreCivic out of the facility by the end of 2021.  *Id.* at 1–2.

Mr. Anderson pleaded guilty to one count of distributing methamphetamine on February 18, 2022.  Doc. 67.  On August 12, 2022, the court entered judgment after sentencing Mr. Anderson to 112 months' imprisonment and five years' supervised release.  Doc. 83.

Mr. Anderson filed his motion 19 days later on August 31, 2022.  He asserts that his motion "has nothing to do with any portion of [his] Federal Charge, Conviction, Sentence, Plea Agreement or anything along that nature" but, instead, "outlines the conditions of [his] confinement while [he] was housed at Core Civic Of America (CCA) while awaiting [his] court proceedings[.]"  Doc. 85-1.  Mr. Anderson argues that "during the time [he] was a detainee . . . [he] witnessed extreme life-threatening and increasing violence, and cruel and unusual punishment that left [him] irreversibly traumatized."  Doc. 85 at 1.  Today, Mr. Anderson is incarcerated at FCI Yazoo City Medium.  *See* Carl F. Anderson (Reg. No. 29942-031) (last visited Apr. 12, 2023), https://www.bop.gov/inmateloc/.

## II.     Legal Standard

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but [this] rule of finality is subject to a few narrow exceptions.  One such exception is contained in [18 U.S.C.] § 3582(c)(1)."  *United States v. Maumau*, 993 F.3d 821, 830 (10th Cir. 2021) (quotation cleaned up).  This exception permits the court to modify a term of imprisonment:

>upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]

18 U.S.C. § 3582(c)(1)(A); *see also Maumau*, 993 F.3d at 830–31 (reviewing § 3582(c)(1)'s history, text, and requirements). Our Circuit has held that the exhaustion requirement is a claim-processing rule that the government may waive or forfeit. *United States v. Hemmelgarn*, 15 F.4th 1027, 1030–31 (10th Cir. 2021).

Aside from this exhaustion requirement, the court applies a three-step analysis to motions filed under § 3582(c)(1)(A). *United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021). Under that analysis, the court may grant a motion for sentence reduction only if "(1) the district court finds that extraordinary and compelling reasons warrant such a reduction; (2) the district court finds that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the district court considers the factors set forth in [18 U.S.C.] § 3553(a), to the extent that they are applicable." *Id.* The court may grant relief "only if all three prerequisites are satisfied," and so, "the three steps [can] be considered in any order." *United States v. Hald*, 8 F.4th 932, 942 (10th Cir. 2021).

### III. Analysis

To modify a sentence "upon motion of the defendant[,]" the court may only do so "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf[.]" 18 U.S.C. § 3582(c)(1)(A). It also may entertain such a motion from a defendant after "the passage of 30 days from the defendant's *unanswered* request to the warden for such relief." *Maumau*, 993 F.3d at 830 (emphasis added).

Here the Bureau of Prisons didn't make the pertinent motion—the inmate did. *See generally* Doc. 85. That means Mr. Anderson must demonstrate that he has exhausted all his

4

administrative rights to appeal or that 30 days passed after he requested relief from the warden of his facility. But Mr. Anderson never asserts that he exhausted those administrative rights. Also, fewer than three weeks had passed between Mr. Anderson's sentencing and the filing of his motion. This means it's unlikely—if not impossible—that more than 30 days had passed between the putative request to the warden and Mr. Anderson's filing of the motion.

"Section 3582(c)(1)(A) requires exhaustion before a court may consider a motion for compassionate release." *Hemmelgarn*, 15 F.4th at 1030. But because the exhaustion requirement isn't a jurisdictional one, the government may waive the exhaustion requirement if it doesn't raise it. *Id.* at 1030–31. Here, the government argues that "it doesn't appear [Mr.] Anderson has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf." Doc. 88 at 5. Thus, the government hasn't waived the exhaustion requirement. The court can't consider Mr. Anderson's motion on its merits because he hasn't satisfied that exhaustion requirement.

Even if Mr. Anderson properly had exhausted, his motion nonetheless fails to present extraordinary and compelling reasons justifying that the court modify his sentence. District courts have "discretion . . . to independently determine the existence of 'extraordinary and compelling reasons,'" as long as they are "consistent with applicable policy statements issued by the Sentencing Commission." *McGee*, 992 F.3d at 1044. The Sentencing Commission hasn't issued an applicable policy statement for defendant-filed compassionate release motions like this one. *Maumau*, 993 F.3d at 837. So, "until the Sentencing Commission issues such a policy statement, the second requirement does not apply."[2] *United States v. Quinn*, No. 10-20129-03-KHV, 2021 WL 3129600, at *2 (D. Kan. July 23, 2021).

---

[2] In April 2023, the Sentencing Commission proposed amendments to U.S.S.G. § 1B1.13, Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement). U.S. Sent'g Comm'n, Amendments to the

Mr. Anderson makes several assertions about his pretrial confinement at CoreCivic, arguing that he "witnessed extreme life-threatening and increasing violence, and cruel and unusual punishment that left [him] irreversibly traumatized." Doc. 85 at 1.  Among his allegations of cruel and unusual punishment, Mr. Anderson contends that poor management caused extensive lockdowns between 23 and 24 hours per day; limited shower access to three days per week; provided improper nutrition and precluded access to hygiene supplies; restricted contact with his family and depleted recreation time because of excessive lockdowns; and deprived him of sleep because inmates roamed freely throughout the night.  *Id.*  He alleges no instances of violence against him personally, but mentions a "common occurrence of violence from fighting, stabbings, suicide[ ] attempts, and severe beatings at an alarming rate[,]" as well as "excessive force from Special Operations Response Team."  *Id.*

But Mr. Anderson presently doesn't reside at CoreCivic's facility, and he hasn't resided there since 2021.  While Mr. Anderson describes egregious and harrowing conditions, he doesn't allege that he is experiencing them now, or at any point since leaving the CoreCivic facility after it closed more than a year ago.  Nor does he allege that anyone aimed violence at him personally.  Also, as already explained, the court would consider presentencing confinement conditions—if at all—during the sentencing phase, not after it already has imposed sentence.  *See supra* at 2 (citing *Carty*, 897 F. Supp. 2d at 205).  Mr. Anderson doesn't argue that he raised the issue of his

---

Sentencing Guidelines 175–83 (Apr. 5, 2023), https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20230405_prelim-RF.pdf.  Because these are only *proposed* amendments, the court doesn't apply them here.  But the court notes that, even under those proposed amendments, Mr. Anderson's allegations don't conform to the proposed policy statement's guidance.  While the amendment proposes to add "Victim of Abuse"—including physical abuse—to the circumstances of extraordinary and compelling reasons, the amendment would require that the "defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of . . . physical abuse resulting in 'serious body injury[.]'"  *Id.* at 180–81 (Proposed Amend. at 6–7).  Here, Mr. Anderson doesn't allege he was a victim of physical abuse.  Instead, he presents claims about conditions during his presentence confinement, not the "term of imprisonment sought to be reduced."  *Id.* at 180 (Proposed Amend. at 6).  Thus, even the proposed policy statement doesn't address the kind of allegations Mr. Anderson asserts here.

conditions during that sentencing hearing or in any presentence motions. Thus, because Mr. Anderson doesn't raise any concerns about his present confinement conditions, and because he neglected to address the conditions at CoreCivic at the proper time, the court holds that he has failed to present any extraordinary and compelling reasons to support modifying his sentence.

In sum, Mr. Anderson must request that the Bureau of Prisons bring a motion to modify his sentence on his behalf. If it doesn't, Mr. Anderson must exhaust the administrative process to appeal the Bureau's failure to bring that motion, or he must wait until 30 days have passed without the warden responding to his request, whichever comes first. Once he meets those requirements, he may file a motion to modify his sentence under 18 U.S.C. § 3582(c)(1)(A). But as things stand now, the court must deny Mr. Anderson's motion for two reasons: (1) he hasn't exhausted his administrative rights, and (2) he doesn't provide extraordinary and compelling reasons that justify modifying his sentence.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Carl Anderson's Motion for Downward Departure Due to Conditions of Confinement (Doc. 85)—construed as a Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(1)(A)—is denied.

**IT IS SO ORDERED.**

**Dated this 19th day of April, 2023, at Kansas City, Kansas.**

                                              **s/ Daniel D. Crabtree**
                                              **Daniel D. Crabtree**
                                              **United States District Judge**